**UNITED STATES of America, Acting as the DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT ex rel. LaWanda GIVLER**

v.

**Gary SMITH, Buckl–Jankowski, Inc., and Gordon Bennett, Inc.**

**Civ.A. No. 89–0647.**

United States District Court, E.D. Pennsylvania.

Sept. 19, 1991.

Nicholas Noel, III, Richard P. Kovacs, Teel, Stettz, Shimer & Di Giacomo, Ltd., Easton, Pa., Michael F. Hertz and Lori K. Miller, U.S. Dept. of Justice, Washington, D.C., David F. McComb, U.S. Atty's. Office, Philadelphia, Pa., for plaintiff.

J. Stephen Kreglow, La Brum and Doak, Bethlehem, Pa., Thomas J. Hanlon, Andrew S. Quinn, Dunmore, Pa., Daniel B. Huyett, Stevens & Lee, Reading, Pa., and Steven E. Angstreich, Levy, Angstreich, Finney, Mann & Burkett, P.C., Philadelphia, Pa., for defendants.

## OPINION

CAHN, District Judge.

In this *qui tam* [1] action, the plaintiff is suing on behalf of the United States of America ("the Government" or "the United States"), pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA" or "the Act"), to recover statutory penalties for fraud committed against the United States. Defendant Buckl and Jankowski ("Buckl" or "the defendant") [2] has moved to dismiss the complaint on the basis that the *qui tam* sections of the Act are unconstitutional.[3] In the alternative, the defendant asserts that the complaint should be dismissed because the plaintiff has failed to plead fraud with particularity. For the reasons which follow, I shall deny the defendant's motion.

---

1. The phrase *qui tam* is taken from the Latin expression "qui tam pro domino rege, quam pro se ipso in hac parte sequitur," which means "who as well for the King as for himself sues in this matter." 3 W. Blackstone, *Commentaries* ★162 & n. 41 (W. Lewis ed. 1898). *Qui tam* actions are "brought on behalf of the government by a private party, who receives some part of the recovery awarded as compensation for his efforts." *United States ex rel. Givler v. Smith,* 760 F.Supp. 72, 72 n. 1 (E.D.Pa.1991) (quoting *Marra v. Burgdorf Realtors, Inc.,* 726 F.Supp. 1000, 1012 (E.D.Pa.1989)). *Qui tam* plaintiffs are also called "relators" or "informers." *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante v. Prudential Ins. Co.,* 736 F.Supp. 614, 614 n. 1 (D.N.J.1990).

2. The defendant maintains that the caption incorrectly identifies it as Buckl–Jankowski, Inc., and that its correct name is Buckl and Jankowski.

3. On May 9, 1990, Buckl filed a motion to dismiss which presented jurisdictional and constitutional questions. I limited briefing to the question of subject matter jurisdiction. On April 9, 1991, I denied the motion to dismiss for lack of jurisdiction. *See United States ex rel. Givler v. Smith,* 760 F.Supp. 72 (E.D.Pa.1991) (*"Givler I"*). With this opinion, I address the constitutional questions raised by Buckl.

## BACKGROUND

The FCA imposes liability for civil penalties and damages on persons who submit false claims to the United States. 31 U.S.C. § 3729. The plaintiff, LaWanda Givler, sues pursuant to § 3730(b)(1) of the Act, which provides that private parties "may bring a civil action for a violation of section 3720 for the person and for the United States Government."

Givler alleges that the defendants colluded to inflate contractual bids for repairs and improvements to the Delaware Terrace Housing Project. The defendants submitted their bids to the Easton Housing Authority ("the Authority"), which in turn used the quotes to formulate an application to the Department of Housing and Urban Development. The Authority received $469,000.00 in federal funds in response to its application. Givler asserts that the inflated bids constituted false claims for purposes of the FCA. Because the United States declined to prosecute the suit, *see* 31 U.S.C. § 3730(b)(4)(B), Givler proceeds on her own, as authorized by § 3730(c)(3) of the FCA.

## DISCUSSION

Buckl bases its motion to dismiss on its contention that the plaintiff has not stated a valid claim because the FCA is unconstitutional. For the purposes of this motion, Buckl does not contest the factual allegations in the Complaint. Rather, the defendant seeks the resolution of the purely legal question of the constitutionality of the FCA.

Buckl asserts that the Act violates the Constitution for three reasons. First, according to the defendant, *qui tam* actions violate the constitutional doctrine of separation of powers. Second, the defendant maintains that the FCA violates the Appointments Clause of the Constitution. Third, Buckl asserts that the statutory creation of *qui tam* plaintiffs does not comport with Article III standing requirements.

■ Under Fed.R.Civ.P. 12(b)(6), "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle the plaintiff to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

■ The defendant is challenging the constitutionality of a duly enacted law, and federal statutes being reviewed for constitutional infirmities are presumptively valid. *See Fullilove v. Klutznick*, 448 U.S. 448, 472, 100 S.Ct. 2758, 2771–72, 65 L.Ed.2d 902 (1980) (one of the first principles of constitutional adjudication is the basic presumption of constitutional validity of duly enacted laws). Thus, when this court "is asked to invalidate a statutory provision that has been approved by both Houses of the Congress and signed by the President, particularly an Act of Congress that confronts a deeply vexing national problem, it should do so only for the most compelling constitutional reasons." *Mistretta v. United States*, 488 U.S. 361, 384, 109 S.Ct. 647, 660–61, 102 L.Ed.2d 714 (1989) (quoting *Bowsher v. Synar*, 478 U.S. 714, 736, 106 S.Ct. 3181, 3193, 92 L.Ed.2d 583 (1986)).

### I. *The False Claims Act*

The FCA provides that any person who submits a fraudulent claim for payment to the government "is liable to the United States Government for a civil penalty [plus] 3 times the amount of damages which the Government sustains." 31 U.S.C. § 3729. The *qui tam* provisions of the Act allow private parties to initiate civil actions to enforce the law. 31 U.S.C. § 3730(b).[4]

---

**4.** The law authorizes *qui tam* plaintiffs to sue in the name of the United States. In contrast, private attorneys general statutes merely permit citizen plaintiffs to sue on their own behalf. *See United States ex rel. Stillwell v. Hughes Heli-*

Under the provisions of the Act, the *qui tam* plaintiff must file the complaint *in camera.* The complaint then remains under seal for sixty days. At the time it is filed, the complaint is served on the United States rather than the defendant. While the complaint remains under seal, the Government decides whether to proceed with the action. 31 U.S.C. § 3730(b)(4)(A). If the Government declines to proceed, the relator has the right to conduct the action. 31 U.S.C. § 3730(b)(4)(B). If the relator's lawsuit interferes with the Government's investigation or prosecution of another action arising out of the same facts, the Government may request a stay of discovery in the *qui tam* action. 31 U.S.C. § 3730(c)(4). Additionally, the United States retains the right to intervene for good cause shown, even if the Government initially declines to prosecute the action. 31 U.S.C. § 3730(c)(4).

Through the above-quoted provisions, the Act "assist[s] the government by enlisting the aid of citizens in enforcing statutes." *Marra v. Burgdorf Realtors, Inc.,* 726 F.Supp. 1000, 1012 (E.D.Pa.1989). The Act "is the government's primary litigative tool for the recovery of losses sustained as the result of fraud against the government." *Avco Corp. v. United States Department of Justice,* 884 F.2d 621, 622 (D.C.Cir.1989) (citing S.Rep. No. 345, 99th Cong., 2d Sess. 2 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 5266). Congress undoubtedly has the power to protect the United States from fraudulent practices. *See United States ex rel. Marcus v. Hess,* 317 U.S. 537, 550, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943). The question presented by the defendant's motion is whether protection through a statutory *qui tam* provision comports with the Constitution. I turn first to the separation of powers challenge.

II. *Separation of Powers and Qui Tam Actions*

A. The Framework for Separation of Powers Inquiry

In its most recent cases analyzing the constitutional issue of separation of pow-

*copters, Inc.,* 714 F.Supp. 1084, 1090 n. 6

ers, *Morrison v. Olson,* 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) and *Mistretta, supra,* the Court adopted a functionalist approach. *See* Harold J. Krent, *Fragmenting the Unitary Executive: Congressional Delegations of Administrative Authority Outside the Federal Government,* 85 Nw.U.L.Rev. 62, 95 (1990); Evan Caminker, *The Constitutionality of Qui Tam Actions,* 99 Yale L.J. 341, 358 n. 85 (1989); Paul Gewirtz, *Realism in Separation of Powers Thinking,* 30 Wm. & Mary L.Rev. 343, 351–54 & n. 39 (1989); *see generally* Suzanne Prieur Clair, Note, *Separation of Powers: A New Look at the Functionalist Approach,* 40 Case W.Res.L.Rev. 331, 331 (1990); Michael L. Yoder, Note, *Separation of Power: No Longer Simply Hanging in the Balance,* 79 Geo.L.J. 173, 179 (1990). The functionalist approaches of *Morrison* and *Mistretta* reflect a "flexible understanding of separation of powers." *Mistretta,* 488 U.S. at 381, 109 S.Ct. at 659; *see generally* Stephen L. Carter, *Constitutional Improprieties,* 57 U.Chi.L.Rev. 357, 402 (1990) (*Morrison* and *Mistretta* contain flexible vision of structural clauses of the Constitution).

*Morrison* and *Mistretta* concluded that "while our Constitution mandates that 'each of the three general departments of government [must remain] entirely free from the control or coercive influence, direct or indirect, of either of the others, ... the Framers did not require—and indeed rejected—the notion that the three Branches must be entirely separate and distinct.'" *Mistretta,* 488 U.S. at 380, 109 S.Ct. at 658–59 (quoting *Humphrey's Executor v. United States,* 295 U.S. 602, 629, 55 S.Ct. 869, 874, 79 L.Ed. 1611 (1935)). Thus, the Court has adhered to the "pragmatic, flexible view of differentiated governmental power," *Mistretta,* 488 U.S. at 381, 109 S.Ct. at 659, espoused by Justice Jackson in *Youngstown Sheet and Tube Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952):

While the Constitution diffuses power the better to secure liberty, it also con-

(C.D.Cal.1989) (citing statutes).

templates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity.

343 U.S. at 635, 72 S.Ct. at 877 (Jackson, J., concurring).

■ When confronted with a separation of powers challenge, courts must focus on whether the law in question fosters the "encroachment or aggrandizement of one branch at the expense of the other." *Morrison,* 487 U.S. at 693, 108 S.Ct. at 2620 (quoting *Buckley v. Valeo,* 424 U.S. 1, 122, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976)); *see also United States ex rel. Truong v. Northrop Corp.,* 728 F.Supp. 615, 620 (C.D.Cal.1989) ("where functions of two coordinate branches are commingled without encroachment or aggrandizement, there is no constitutional violation"); Alan B. Morrison, *A Non–Power Looks at Separation of Powers,* 79 Geo.L.J. 281, 285–87 (1990) (in conducting separation of powers inquiry, look to whether one branch has encroached on the power of another). Therefore, Congress may constitutionally provide for the appointment of an independent prosecutor and deny the President exclusive control over the independent counsel so long as the President's authority has not been unduly trammeled.[5] *See Morrison,* 487 U.S. at 690, 108 S.Ct. at 2618–19; *see also* Daniel N. Reisman, *Deconstructing Justice Scalia's Separation of Powers Jurisprudence: The Preeminent Executive,* 53 Alb.L.Rev. 49, 54 (1988) (citing *Morrison,* 487 U.S. at 690, 108 S.Ct. at 2618–19). Similarly, "Congress' decision to create an independent rulemaking body to promulgate sentencing guidelines and to locate that body within the Judicial Branch is not unconstitutional unless Congress has vested in the Commission powers that are more appropriately performed by the other Branches or that undermine the integrity of the Judiciary." *Mistretta,* 488 U.S. at 385, 109 S.Ct. at 661.

■ Courts adopting a functionalist approach must employ a context-specific inquiry. *Cf.* Gewirtz, 30 Wm. & Mary L.Rev. at 351–52 (1989) (Court decisions in the separation of powers area should be read in light of particular factual circumstances of each case). Therefore, in evaluating the constitutionality of the *qui tam* provisions, I shall focus on the objectives and structure of the FCA itself, as well as the effect of the Act on the balance of power among the various Branches of government.

**B. The FCA's Impact on the Executive Branch**

■ The defendant argues that the Act is unconstitutional because it deprives the Executive of the ability to exercise discretion in enforcing the law. After *Morrison,* Buckl's assertion must fail. In *Morrison,* the Court upheld a statute which indisputably removed some executive control over the enforcement of criminal laws. The Court noted:

> There is no real dispute that the functions performed by the independent counsel are "executive" in the sense that they are law enforcement functions that typically have been undertaken by officials within the Executive Branch.... Although the counsel exercises no small amount of discretion and judgment in deciding how to carry out her duties under the Act, we simply do not see how the President's need to control the exercise of that discretion is so central to the functioning of the Executive Branch as to require as a matter of constitutional law that the counsel be terminable at will by the President.

*Morrison,* 487 U.S. at 691, 108 S.Ct. at 2619. Thus, after *Morrison,* the fact that an actor performs an "executive function" is irrelevant; the pertinent inquiry is whether the FCA "impede[s] the President's ability to perform his constitutional duty." Reisman, 53 Alb.L.Rev. at 58 n. 55 (quoting *Morrison,* 487 U.S. at 691, 108 S.Ct. at 2619); *cf.* Stephanie A.J. Dangel, *Is Prosecution a Core Executive Function?*

**5.** In *Morrison,* the Court upheld Title VI of The Ethics in Government Act, 28 U.S.C. §§ 591–99, which allowed the appointment of an independent counsel to investigate and, if necessary, prosecute certain high ranking government officials for violations of federal criminal laws.

*Morrison v. Olson and the Framers' Intent,* 99 Yale L.J. 1069, 1069–70 (1990) (although acknowledging that law enforcement typically undertaken by executive, *Morrison* majority held independent counsel act constitutional because it did not impermissibly interfere with Presidential authority).

The President must retain "sufficient—as against absolute or total—control over the litigation." *Truong,* 728 F.Supp. at 621; *see also United States ex rel. Stillwell v. Hughes Helicopters, Inc.,* 714 F.Supp. 1084, 1089 (C.D.Cal.1989). Any law that does not impermissibly undermine the Executive's ability to perform its litigative function will withstand constitutional scrutiny, even if that law removes some executive control over prosecution. *Morrison,* 487 U.S. at 690–91, 108 S.Ct. at 2618–19; *Truong,* 728 F.Supp. at 621.

Buckl argues that the FCA is unconstitutional because the Executive cannot control the *qui tam* relators who are enforcing the law. Given the Act's structure, however, "it can hardly be said that the Attorney General is in any way at the mercy of either the *qui tam* plaintiff or the judicial branch." *Truong,* 728 F.Supp. at 621. Although a relator may file suit without the Government's consent, the Government may join in the lawsuit. Even if the United States chooses not to participate in the suit's prosecution, it must be served with all pleadings and deposition transcripts. Moreover, the Government may intervene at any time, for good cause shown. 31 U.S.C. § 3730(c)(3); *see also Truong,* 728 F.Supp. at 621. If the United States participates in the lawsuit, it may settle or dismiss it in spite of the relator's objection.[6] Finally, the Government retains the ability to stay the relator's discovery upon a showing that the plaintiff's efforts would interfere with another Government investigation. 31 U.S.C. § 3730(c)(4). This court therefore concludes, as have other courts, that because the FCA gives the Executive sufficient control over the relator and the

litigation, the Act does not run afoul of the doctrine of separation of powers. *See Truong,* 728 F.Supp. at 622; *Stillwell,* 714 F.Supp. at 1093.

■ The defendant also asserts that the *qui tam* provisions deprive the Government of its discretion to determine how the laws are enforced, noting that the Executive Branch must consider budgetary, criminal justice, and national security concerns when making prosecutorial decisions. The FCA does not implicate budgetary concerns, however, because the Government need not expend its resources when the *qui tam* plaintiff assumes the burden of prosecution. *See* Caminker, *supra,* 99 Yale L.J. at 340. Furthermore, if the *qui tam* lawsuit implicates criminal justice, national security, or any other concern, the Government may intervene, or request a stay of discovery, in the *qui tam* action. Indeed, as noted by the *Stillwell* court, the FCA affords the Executive much more control than the Ethics in Government Act, the statute under consideration in *Morrison.* Under the Ethics in Government Act,

> [t]he Attorney General is not permitted to take over or even *participate* in the independent counsel's investigation. In contrast, the amended False Claims Act allows the government to *take over* a false claims action on a showing of good cause even if the government initially declines to intervene.

*Stillwell,* 714 F.Supp. at 1092 (emphasis in original). Therefore, after *Morrison,* the Act must survive Buckl's separation of powers challenge. *See Stillwell,* 714 F.Supp. at 1093 ("[FCA] amendments provide far greater executive authority over the conduct of false claims litigation than that provided for in the [law] validated in *Morrison*"); *see also Truong,* 728 F.Supp. at 622 (FCA grants Executive greater control than did Ethics in Government Act). Having determined that the defendant's separation of powers challenge must fail, I turn to Buckl's argument that the Act violates the Appointments Clause.

---

**6.** Any court dismissing a *qui tam* suit at the Government's request must allow the relator to voice any objections at a hearing. However,

after holding the hearing, the court may dismiss the suit over the relator's objection. 31 U.S.C. § 3730(c)(2)(A)–(B).

## III. *The Appointments Clause*

■ The Appointments Clause of Article II states:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. The defendant contends that the FCA violates this constitutional provision because it allows individuals who are not appointed in accordance with the Clause to conduct litigation. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) established that only officers of the United States, as defined by the Appointments Clause, may conduct litigation on behalf of the Government. 424 U.S. at 140, 96 S.Ct. at 692. *Buckley*, however, is entirely distinguishable from this case. The Federal Elections Commission, the body under examination in *Buckley*, was "a standing body charged with enforcing federal laws whose members were appointed by Congress, served for a specific tenure, and drew a federal salary." *Truong*, 728 F.Supp. at 623. In that case, Congress was encroaching on executive functions by giving primary responsibility for litigation to persons under Congressional control. *Qui tam* plaintiffs, by contrast, have little authority and are suing pursuant to a statute which invites the Executive to take over the litigation. *See* Caminker, 99 Yale L.J. at 375.

Because of that essential difference, this court agrees with the the *Truong* court, which reasoned that, "the underlying rationale of *Buckley v. Valeo* is simply not apposite here." 728 F.Supp. at 623; *cf. Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (courts may appoint impartial private attorneys to act as prosecu-

tor for judicial contempt judgments). Accordingly, the Appointments Clause challenge lacks merit. I shall now address the defendant's third constitutional argument.

## IV. *Article III Standing and Qui Tam Relators*

■ The Constitution limits the judicial power of the United States to the resolution of "cases and controversies." U.S. Const., art. III. In order for a valid "case or controversy" to exist, a litigant must have standing to seek adjudication of the rights at issue. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The party invoking the court's authority must demonstrate three things; first, that the putatively illegal conduct of the defendant has caused some actual or threatened injury to him personally; second, that the injury is fairly traceable to the challenged action; and third, that the injury is likely to be redressed by a favorable decision in the case he has brought. *See Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758 (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979) and *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)); *see also Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990); *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984); *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir.1990); *see generally* William A. Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 222 (1988); Valerie R. Park, Note, *The False Claims Act*, Qui Tam *Relators, and the Government: Which Is the Real Party to the Action?*, 43 Stan.L.Rev. 11061, 11076 (1991); Thomas R. Lee, Comment, *The Standing of* Qui Tam *Relators Under the False Claims Act*, 57 U.Chi. L.Rev. 543, 544 (1990).

The defendant argues that, because the FCA confers standing on *qui tam* plaintiffs to assert the Government's rights, the

plaintiffs have no personal rights at stake in the litigation. According to Buckl, because a congressional enactment cannot abrogate Article III standing requirements, *see Valley Forge,* 454 U.S. at 487 n. 24, 102 S.Ct. at 766 n. 24, the FCA cannot create a cause of action for relators if they cannot show the constitutional minimum of injury-in-fact. *Truong,* 728 F.Supp. at 617; *Stillwell,* 714 F.Supp. at 1096; *see also McClure v. Carter,* 513 F.Supp. 265 (D.Idaho), *aff'd sub nom., McClure v. Reagan,* 454 U.S. 1025, 102 S.Ct. 559, 70 L.Ed.2d 469 (1981); *see generally* Fletcher, 98 Yale L.J. at 222–23. There is no conflict between the FCA and Article III, however.

■ Modern standing doctrine is designed to serve two distinct purposes. First, it "limits the business of Federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). Second, it defines the role of the judiciary "to assure that the Federal courts will not intrude into areas committed to the other branches of government." *Flast,* 392 U.S. at 95, 88 S.Ct. at 1950; *see also Mistretta,* 488 U.S. at 385, 109 S.Ct. at 661 (standing doctrines "prevent the Judiciary from encroaching into areas reserved for the other Branches by extending judicial powers to matters beyond" disputes traditionally capable of resolution through judicial process); *see generally* Caminker, 99 Yale L.J. at 380–81.

■ The *qui tam* provisions of the FCA are designed to serve these purposes of standing doctrine. *See* Caminker, 99 Yale L.J. at 381 (unique structure of *qui tam* litigation secures values underlying standing doctrine). The defendant cannot dispute that the Government has been injured if the alleged fraud occurred. The relator brings the suit in the name of, and on behalf of, the Government. "Where there is evidence of palpable injury to the entity on whose behalf and in whose name the suit is brought, it is superfluous to require that the relator be individually aggrieved." *Truong,* 728 F.Supp. at 619; *see also Stillwell,* 714 F.Supp. at 1098 (FCA "essentially creates, by legislative fiat, a *de facto* assignment of a portion of the government's interest in the action"). The relator has standing by suing in the place of the Government.[7]

Moreover, the relator has a sufficient stake to ensure the genuine adverseness of litigation. *See, e.g., Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968) (citing *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). The statutory bounty gives the relator a personal stake in the outcome of the litigation. *See Truong,* 728 F.Supp. at 618–20; *Stillwell,* 714 F.Supp. at 1097–99; *see also* Caminker, 99 Yale L.J. at 383.[8] Therefore, the "concrete adverseness which sharpens the presentation of issues," *see Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), exists when a relator files a lawsuit pursuant to the FCA.

*Qui tam* actions also do nothing to force federal courts into exercising executive or legislative functions, such as policymaking. Congress, by passing the FCA, has already established the policy that citizen plaintiffs may sue on behalf of the Government for

---

7. As one commentator has noted, the United States always requires an agent to act on its behalf. *See* Caminker, 99 Yale L.J. at 382 n. 203. Congress may choose to assign that responsibility to Department of Justice attorneys, or other agencies, or to private attorneys hired by the Government. *See, e.g.,* Federal Debt Collection Practices Act, 31 U.S.C. § 3718 (private attorneys hired by contract); Farm Credit Amendments Act, 12 U.S.C. § 2244(c) (private attorneys designated by Farm Board). With the FCA, Congress chose to allow private parties to represent the Government.

8. The bounty is distinguishable from attorney's fees, which the Court determined did not create a judicially cognizable interest. A fee award "is wholly unrelated to the subject matter of the litigation, and bears no relation to the statute whose constitutionality is at issue." *Diamond v. Charles,* 476 U.S. 54, 70, 106 S.Ct. 1697, 1707–08, 90 L.Ed.2d 48 (1986). By contrast, the statutory *qui tam* bounty is "inextricably intertwined with the underlying lawsuit," thereby creating "a concrete identifiable interest that falls within the confines of Article III." *Stillwell,* 714 F.Supp. at 1099.

violations of the False Claims Act. The court is merely implementing that policy, not making its own determinations. *Cf. Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985) (because courts are ill-suited to make relevant policy judgments, judicial review of criminal prosecutorial discretion disfavored). Therefore, the judiciary is not impermissibly performing an executive or legislative function by recognizing a *qui tam* plaintiff.

Finally, although the Court has never addressed the question of *qui tam* relator standing, its precedents indirectly support the conclusion that the FCA complies with constitutional standing requirements. Standing is a preliminary jurisdictional requirement. *See* Fletcher, 98 Yale L.J. at 223. When considering *qui tam* statutes, the Court has never questioned the standing of the relator involved. In fact, as the *Stillwell* court pointed out, Justices Frankfurter and Harlan, who shared quite restrictive views on standing, did not believe *qui tam* statutes to present a problem:

> Even when dissenting in cases that they viewed as unwarranted expansions of the standing doctrine, these [J]ustices cited *qui tam* statutes as classic examples of constitutionally proper standing. *See Flast v. Cohen*, 392 U.S. 83, 120 [88 S.Ct. 1942, 1963, 20 L.Ed.2d 947] (1968) (Harlan, J., dissenting) (in *qui tam* actions, the courts have "repeatedly held that individual litigants, acting as private attorneys-general, may have standing a[s] 'representatives of the public interest.'") (quoting *Scripps–Howard Radio, Inc. v. FCC*, 316 U.S. 4, 14 [62 S.Ct. 875, 882, 86 L.Ed. 1229] (1942)); *Priebe & Sons v. United States*, 332 U.S. 407, 418 [68 S.Ct. 123, 129, 92 L.Ed. 32] (1947) (Frankfurter, J., dissenting) (in *"qui tam* actions ... society makes individuals the representatives of the public for the purpose of enforcing a policy explicitly formulated by legislation.")

*Stillwell*, 714 F.Supp. at 1097.

In sum, *qui tam* actions involve "a concrete, identifiable claim for fraud against the government the prosecution of which Congress, pursuant to its policy-making authority, has placed under the direction of the *qui tam* relator." *Truong*, 728 F.Supp. at 620. The relator, who has received the government's right to litigate through assignment, also has a personal stake in the litigation by virtue of the statutory bounty. Moreover, standing has apparently never concerned the Court when it had the opportunity to consider *qui tam* litigation. Accordingly, Buckl's Article III challenge to the Act must fail.

## V. *Failure to Plead Fraud with Particularity*

■ The defendant moves under Fed. R.Civ.P. 9(b) for dismissal of the complaint because it fails to plead fraud with particularity.[9] The defendant asserts that, although Givler asserts that the defendants made false statements, she does not identify the content, time, place, or speaker of the statements.

The purpose of Rule 9(b) is "to place the defendant on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). In *Seville*, the Court of Appeals held that, as long as there is precision and some measure of substantiation in the allegations, the complaint must stand. *See Seville*, 742 F.2d at 791; *see also Berk v. Ascott Inv. Corp.*, 759 F.Supp. 245, 254 (E.D.Pa.1991). Although date, place, or time allegations will provide precision, substantiation, and notice, "nothing in the rule requires them." 742 F.2d at 791.

Givler has satisfied the rule's requirement that she put the defendants on notice of the precise misconduct with which they are charged. In her complaint, the relator

---

9. Fed.R.Civ.P. 9(b) provides, in relevant part: In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

identifies the fraudulent statements or acts in ¶¶ 10 and 16, and the violations of government contract law in ¶ 13. Furthermore, she identifies the party allegedly defrauded as the Department of Housing and Urban Development. Finally, she alleges that Buckl acted in collusion with the other defendants in ¶¶ 10 and 17, thereby adequately pleading conspiracy. The defendants have more than adequate notice of the alleged fraud, and the allegations are precise enough to support a claim for fraud. *Cf. In re Midlantic Corp. Shareholder Litig.*, 758 F.Supp. 226, 231 (D.N.J.1990) ("If the pleaded facts and supporting allegations permit the inference of a colorable claim for fraud and afford the defendant notice as to which actions or communications are alleged to have been fraudulent, the complaint will withstand a motion to dismiss.").

## CONCLUSION

Based on the foregoing discussion, I shall deny the defendant's motion to dismiss.[10]

---

**10.** Buckl also moved to dismiss the plaintiff's claims for punitive damages. In her complaint, the plaintiff demands "punitive damages as provided by law." It appears that she is simply demanding the treble damages provided by the False Claims Act. *See, e.g., United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (treating special damages provision of FCA as one for punitive damages); *cf. Smith v. Wade*, 461 U.S. 30, 85, 103 S.Ct. 1625, 1654–55, 75 L.Ed.2d 632 (1983) (Rehnquist, J., dissenting) (FCA created express punitive damages remedy). Accordingly, the court will treat the relator's request for punitive damages as an invocation of the statutory treble damages provision.