**UNITED STATES, ex rel. Barbara BURCH, et al., Plaintiffs,**

v.

**PIQUA ENGINEERING, INC., Defendant.**

No. C–1–90–745.

United States District Court, S.D. Ohio, W.D.

June 18, 1992.

Ann Louise Lugbill, James Burdette Helmer, Jr., Helmer, Lugbill & Whitman Co., Cincinnati, Ohio, for plaintiffs Barbara K. Burch, Joan R. Harmon and Lowell A. Kissinger.

John William Beatty, Dinsmore & Shohl, Cincinnati, Ohio, for defendant Piqua Engineering.

Michael Davidson, Senate Legal Counsel, Washington, D.C., for amicus curiae U.S. Senate.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

SPIEGEL, District Judge.

This matter is before the Court on the Defendant's motion to dismiss (doc. 19), the memorandum of *amicus curiae* United States Senate in support of the constitutionality of the False Claims Act (doc. 22), the Plaintiffs' response (doc. 23), and the Defendant's reply (doc. 25).[1]

## BACKGROUND

Plaintiffs Barbara K. Burch, Joan R. Harmon, and Bell A. Kissinger were employed by Defendant Piqua Engineering, Inc. ("Piqua" or the "Company") in Piqua, Ohio. Piqua is a government contractor which manufactures missile detonators. The Plaintiffs allege that Piqua was deviating from contractual requirements. Specifically, the Plaintiffs claim that Piqua did

---

1. The Court has greatly benefited in determining this matter by excellent briefing from all counsel.

not use the contractually prescribed testing procedures and quality standards on detonators and detonator parts supplied to the government. Furthermore, the Plaintiffs allege that Piqua falsely certified that it had met the requisite testing and quality standards.

Upon learning of Piqua's alleged wrongdoing, the Plaintiffs contend that they alerted both the Company and the government. The Plaintiffs finally allege that as a result of notifying the government, Piqua discriminated against the Plaintiffs by firing Ms. Burch and Mr. Kissinger and laying off Ms. Harmon. The Defendant denies the Plaintiffs' allegations.

At this point, however, we need not become to deeply immersed in the facts. The sole issue before this Court is whether the False Claims Act, 31 U.S.C. § 3729 *et seq.* (1992) (hereinafter "FCA" or *"qui tam"* provisions) is constitutional.

## DISCUSSION

### *Overview*

The laws of Congress are presumed to be constitutional. *See e.g., United States ex rel. Givler v. Smith,* 775 F.Supp. 172, 175 (E.D.Pa.1991) (citing *Fullilove v. Klutznick,* 448 U.S. 448, 472, 100 S.Ct. 2758, 2771, 65 L.Ed.2d 902 (1980)). Nevertheless, the will of the majority may not trump the rights established by the Constitution. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). The power of the federal courts to engage in judicial review is, for all practical purposes, unquestioned. *See generally,* Robert Bork, *The Tempting of America* (1990) (discussing the methods by which courts should engage in judicial review); Laurence H. Tribe, *American Constitutional Law* (2d ed. 1988) (surveying Constitutional law and discussing judicial review).

The focus of this Court's inquiry must be on whether the FCA violates any provision of the Constitution itself. The Plaintiffs make elaborate arguments concerning the age and historical importance of *qui tam* statutes. The longevity of a statute, however, is not determinative of its Constitutionality. *See generally, United States ex rel. Truong v. Northrop,* 728 F.Supp. 615, 618 (C.D.Cal.1989) (rejecting historical analysis in considering the constitutional adequacy of standing in *qui tam* actions).[2] Rather, it demonstrates that the will of the majority, exercised through Congress, has decided not to repeal such a law. Furthermore, the fact that the *qui tam* provisions may be successful in deterring fraud upon the government is also not at issue. *See Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (the practical problems imposed by invalidating the legislative veto are not determinative in considering its constitutionality). Thus, this Court's analysis is not driven by its approval or disapproval of the FCA, but rather by the Constitution itself.

We note that numerous district courts have upheld the constitutionality of the FCA, but that no Circuit Court of Appeals has yet ruled on this issue. *See e.g., United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,* 777 F.Supp. 195 (N.D.N.Y.1991); *Givler,* 775 F.Supp. 172; *Truong,* 728 F.Supp. 615; *United States ex rel. Newsham v. Lockheed Missiles & Space Co.,* 722 F.Supp. 607 (N.D.Cal.1989); *United States ex rel. Stillwell v. Hughes Helicopters, Inc.,* 714 F.Supp. 1084 (C.D.Cal.1989). Despite this adverse precedent for their position,[3] the Defendants make several arguments that the FCA is unconstitutional: (1) no case or controversy exists in FCA actions; (2) the *qui tam* provisions violate the Appointments Clause; (3) the FCA violates the

---

**2.** We recognize, of course, that the long history of the FCA is probative of the fact that courts have had ample opportunity to invalidate the FCA. *See United States ex rel. Rudd v. Gen'l Contractors, Inc.,* No. C-89-397-RJM, 4 (E.D.Wash. Dec. 4, 1990) ("[t]he concept of *qui tam* is so deeply rooted in the nation's history that it is most improbable that any court today could divine some infirmity of constitutional magnitude which would not have been equally apparent many decades, if not centuries, ago").

**3.** We note, however, that no court has issued a decision that is binding upon this Court.

separation of powers doctrine. We shall examine these contentions in turn, but first we will briefly examine the provisions of the FCA.

### The False Claims Act

Under the FCA, any person who knowingly submits a false claim to the government is liable to the United States for a civil penalty and damages. 31 U.S.C. § 3729.[4] The Act provides that the Attorney General and Department of Justice may enforce the Act. The Act, however, also allows enforcement by private individuals on behalf of the United States. *Id.* at § 3730(b)(1). Congress designed the FCA to "... encourage private citizens to help the executive branch deter and redress violations of federal law." Evan Caminker, *The Constitutionality of Qui Tam Actions,* 99 Yale L.J. 341, 344 (1989).

The Act mandates that complaints are filed *in camera* and remain under seal for at least 60 days. *Id.* at 3730(b)(2). During this time, the United States government must determine whether to intervene and take primary responsibility for the suit or to decline in its right to intervene, and thus allow a private litigant to continue in the suit. *Id.*

In the matter before the Court, the government declined to intervene and the matter was removed from seal. The *qui tam* Plaintiffs, Ms. Burch and others, have continued to prosecute the suit that is now before the Court.

### Case or Controversy

■ The Defendants first contend that the FCA is unconstitutional because in *qui tam* actions, no case or controversy exists. The power of the federal courts is confined to the adjudication of actual "cases" and "controversies." U.S. Constitution, Art. III. In order to satisfy the case and controversy requirement of Article III, a plaintiff must have standing to sue. *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The standing requirement properly limits the role of the federal courts. *Id.* To have standing under Article III, a plaintiff must show actual or threatened injury. *Gladstone, Realtors v. Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979).

The Defendants argue that only the United States has suffered an actual or threatened injury according to the *qui tam* Plaintiffs' Complaint. Therefore, the Defendants argue that the *qui tam* Plaintiffs do not have standing because they do not possess any sort of real or threatened injury.

Several courts have addressed the issue of standing under the FCA. Standing has been found to exist because of the potential harm that may be suffered as a result of the relator's interest in the statutory bounty. *Givler,* 775 F.Supp. at 180; *Stillwell,* 714 F.Supp. at 1097–98. We, however, believe that this approach "puts the cart before the horse," so to speak. Any person bringing a suit at law has the hope of receiving money, either by settlement or by judgment. Thus, the Supreme Court has concluded that "... the essence of standing 'is not a question of motivation but of possession of the requisite ... interest that is, or is threatened to be, injured by the ... [allegedly illegal] conduct'" of the defendant. *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 225–226, 94 S.Ct. 2925, 2934–35, 41 L.Ed.2d 706 (1974) (quoting *Doremus v. Board of Education,* 342 U.S. 429, 435, 72 S.Ct. 394, 397, 96 L.Ed. 475 (1952)); *but see Village of Bellwood v. Dwivedi,* 895 F.2d 1521, 1526 (7th Cir.1990) (standing may be created by Congressional statutes creating bounty for the plaintiff). In sum, Congress may expand federal court jurisdiction by enacting statutes which create legal rights; however, Congressional action does not eliminate the Constitutional requirement that a case or controversy must exist. *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Gladstone,* 441 U.S. at 100, 99 S.Ct. at 1608 (1979); Thomas R. Lee, Comment, *Standing of Qui Tam Relators,* 57 U.Chi.L.Rev. 543, 546 (1990) (a statute cannot abrogate Article III require-

---

**4.** Congress amended the FCA in 1986 to deter any improprieties by defense contractors. False Claims Amendments Act of 1986, 31 U.S.C. § 3729.

ments, *citing Gladstone,* 441 U.S. at 100, 99 S.Ct. at 1608.)

Rather than basing its decision upon a theory of statutory bounty, this Court finds that the Plaintiffs have standing for another reason. The Plaintiffs in a *qui tam* action have standing based upon the potential ramifications to their employment status by initiating an action under the FCA. The case before the Court serves as an apt example. After bringing this *qui tam* action, the Plaintiffs aver that Piqua fired two of the Plaintiffs and laid off the third. Thus, the Plaintiffs allegedly have suffered an actual injury—namely, the loss of their job. As a result, the Plaintiffs have standing. However, even if the Plaintiffs were still working at Piqua, standing would exist because of the risk of injury to the Plaintiffs in the future. *Gladstone,* 441 U.S. at 99, 99 S.Ct. at 1607 (plaintiff has standing if they can show threatened injury). *Qui tam* plaintiffs who have not been fired might lose their job after the conclusion of their suit or fail to be promoted because they had earlier initiated an action against their employer under the FCA.

The *Stillwell* court considered the same issues. In upholding the constitutionality of the FCA, the court noted that

> [p]ublic disclosure of the filing of the complaint ... will often result in termination of that relationship or in a compromised opportunity for future advancement. In addition, reporting the information to the government may result in a suspension of a governmental procurement program, as has happened recently, thus jeopardizing the relator's continued employment. Furthermore, the disclosure of the discovery of the alleged fraud to a superior of the government may create difficulty in finding future employment in the same industry.

*Stillwell,* 714 F.Supp. at 1099; *but see Truong,* 728 F.Supp. at 619 n. 5 (prospective employment injuries lack the necessary nexus to the substantive character of the FCA, and because prospective employment injuries constitutes only speculative harm); Lee, *Standing of Qui Tam Relators,* 57 U.Chi.L.Rev. at 556 (criticizing the reason-

ing in *Stillwell* because the risk to a plaintiff's employment is "... too far removed from the injury to provide Article III causation").

### The Appointments Clause

■ Piqua next contends that the Appointments Clause prohibits Congress from delegating law enforcement responsibility to private persons such as the *qui tam* Plaintiffs in this case. *See* U.S. Const. art II, § 2, cl. 2. The Appointments Clause prohibits Congress from appointing officers of the United States. *Buckley v. Valeo,* 424 U.S. 1, 127–132, 96 S.Ct. 612, 686–88, 46 L.Ed.2d 659 (1976) (invalidating a law authorizing Congress to appoint Federal Election Commissioners). The Appointments Clause applies to all executive and administrative officers who serve according to federal law, and who exercise significant authority over actions by the federal government. *Stillwell,* 714 F.Supp. at 1094. Thus, the Appointments Clause prevents Congress from infringing upon the rights and responsibilities of the Executive Branch. *Seattle Master Builders v. Pac. Northwest Elec. Power and Conservation Planning Council,* 786 F.2d 1359, 1364–65 (9th Cir.1986), *cert. denied,* 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987). In essence, Piqua argues that these *qui tam* Plaintiffs cannot litigate on behalf of the United States because they are not officers of the United States.

However, the status of *qui tam* plaintiffs does not implicate the Appointments Clause, because *qui tam* plaintiffs are not officers of the United States. *Qui tam* plaintiffs are not appointed by Congress, they do not receive a federal salary, and they serve for no specified term. *Stillwell,* 714 F.Supp. at 1094, 1095. Furthermore, as the *Stillwell* court notes, *qui tam* plaintiffs are not vested with primary responsibility to enforce the FCA on behalf of the United States. *Truong,* 728 F.Supp. at 623. Instead, the United States retains this responsibility.

The *qui tam* plaintiff only has a right to sue and pursue his or her own interest in monetary damages as a result of a single

case. *Id.; Newsham*, 722 F.Supp. at 613. Moreover, the Executive Branch may limit the rights of the *qui tam* plaintiff at any point by intervening upon a showing of good cause. *Id.*[5] Thus, in FCA actions, we cannot find any Congressional infringement upon the rights and responsibilities of the Executive Branch. *See Seattle Master*, 786 F.2d at 1364–65. In sum, because *qui tam* plaintiffs are not officers of the United States, the FCA does not violate the Appointments Clause.

### Separation of Powers

■ Piqua finally contends that the False Claims Act violates the separation of powers doctrine by undermining the power of the Executive Branch to control litigation that involves the United States. The Constitution requires that the Executive Branch execute and enforce the federal laws. U.S. Const. art. II, § 3.

The Supreme Court has recently analyzed the separation of powers doctrine in *Morrison v. Olson*, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988). In *Morrison*, the Court considered a challenge to the constitutionality of the Ethics in Government Act. 28 U.S.C. §§ 49, 591–599. The Ethics in Government Act divested the Attorney General of his prosecutorial responsibilities by granting court-appointed special counsel the exclusive power to prosecute high-ranking government officials. Under the Ethics in Government Act, unless the Attorney General finds that no reasonable grounds exist for further investigation of a high-ranking government official, then all authority to investigate and prosecute the matter is transferred to the independent prosecutor. *Id.*

■ Justice Scalia's fiery dissent to the contrary, the Court upheld the constitutionality of the special prosecutor statute, because it did not violate the separation of powers doctrine. The Court did not require a rigid, formalistic division of power between the three branches; rather, the Court essentially permitted a certain amount of shared power. *Morrison*, 487

U.S. at 654, 108 S.Ct. at 2599; *see also Mistretta v. United States*, 488 U.S. 361, 380–81, 109 S.Ct. 647, 658–59, 102 L.Ed.2d 714 (1988) (explaining the flexible separation of powers inquiry that courts must use in light of the fact that the three branches of government need not be entirely separate and distinct); Harold J. Krent, *Fragmenting the Unitary Executive: Congressional Delegations of Administrative Authority Outside the Federal Government*, 85 Nw.U.L.Rev. 62, 95 (1990) (analyzing *Morrison* and *Mistretta* and concluding that Supreme Court has shown concern about the practical consequences in separation of powers inquiries). Thus, when confronted with a separation of powers challenge, courts must question whether the statute permits the "encroachment or aggrandizement of one branch at the expense of the other." *Morrison*, 487 U.S. at 693, 108 S.Ct. at 2620.

The *Morrison* Court held that the power to enforce federal law may be granted to persons outside the Executive Branch as long as the Executive Branch retains a sufficient control over the litigation and thus ensures that the laws are faithfully executed. *Id.* at 696, 108 S.Ct. at 2621. Consequently, the Court determined that the Ethics in Government Act was constitutional.

In comparison to the Ethics in Government Act, under the *qui tam* provisions, the Executive Branch retains a great deal of control over litigation. Pursuant to the FCA, the Executive Branch may pursue any *qui tam* action itself. 31 U.S.C. § 3730. A *qui tam* plaintiff may only pursue an action where the United States has declined to intervene. If the United States declines to do so, it may later intervene ". . . upon a showing of good cause." *Id.* at § 3730(c)(3). Furthermore, if the United States determines to prosecute a case, it assumes responsibility for litigating the action. *Id.* at § 3730(b)(4)(A). If disagreements between the United States and the *qui tam* plaintiff over procedure and strategy are substantial enough, the United

---

**5.** Thus, we disagree with the Defendant's assertion that *qui tam* plaintiffs are not subject to control by a government official. *See* Defendant's Motion to Dismiss, doc. 19, at 23.

States may ask the court to restrict the *qui tam* plaintiff's participation in the action. *Id.* at 3730(c)(2)(C). The United States also has the power to settle the case over the *qui tam* plaintiff's objections, provided the court approves the settlement as fair, adequate and reasonable. *Id.* at 3730(c)(2)(B). Finally, the United States retains ultimate power to dismiss the case, notwithstanding the objections of the *qui tam* plaintiff. *Id.* at 3730(c)(2)(A)–(B).

Thus, in sum, the False Claims Act provides the Justice Department the authority to: (1) direct the action as primary counsel; (2) monitor an action while retaining the option to intervene later; and (3) move to dismiss or settle the action. The FCA has been "... carefully crafted to enable the executive to enter the action and take control of the course of the litigation." *Stillwell,* 714 F.Supp. at 1090; *see also* Caminker, *The Constitutionality of Qui Tam Actions,* 99 Yale L.J. at 352 (observing that the FCA provides the Executive Branch with substantial control over *qui tam* litigation).

Under the analysis adopted by the Supreme Court in *Morrison,* the FCA does not violate the separation of powers doctrine. The *qui tam* plaintiff does have relative freedom in pursuing his suit, but this freedom is subject to the limitations discussed above. More importantly, however, the "... independence from the executive branch of a litigator is not a constitutional bar." *Stillwell,* 714 F.Supp. at 1093 (*citing Morrison,* 487 U.S. at 654, 108 S.Ct. at 2599); *Truong,* 728 F.Supp. at 622 ("False Claims Act guarantees the executive branch greater litigative control than ... the Ethics in Government Act...."); *Newsham,* 722 F.Supp. at 613 (same).

Piqua attempts to distinguish the Ethics in Government Act from the FCA on the ground that the *qui tam* plaintiff's personal stake in an FCA action may adversely impact other governmental interests. However, the FCA protects against this risk because the Act allows the United States sufficient control over the litigation. The FCA provides adequate safeguards for the United States to protect its interests, as

the Executive Branch has control over the prosecution of cases and their ultimate disposition. Therefore, we hold that the FCA does not violate the separation of powers doctrine.

## CONCLUSION

This Court has carefully considered the Defendants'. arguments. We can find no aspect of the FCA that violates the Constitution. As a result of this conclusion, this Court must defer to the will of the elected branches of government as expressed in the FCA.

Accordingly, the Defendant's motion to dismiss is denied.

SO ORDERED.